IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TEXARKANA DIVISION

| | | |
|---|---|---|
| SHAWN GIESWEIN | § | |
| v. | § | Civil Action No. 5:22cv92-RWS-JBB |
| WARDEN SALMONSON | § | |

<u>REPORT AND RECOMMENDATION<br>OF THE UNITED STATES MAGISTRATE JUDGE</u>

The Petitioner Shawn Gieswein, proceeding *pro se*, filed this application for the writ of habeas corpus under 28 U.S.C. § 2241 raising claims concerning the calculation of his sentence and the legality of his conviction. The petition was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

**I. The Petitioner's Complaint**

In his first ground for relief, Petitioner asserts that 18 U.S.C. § 922(g)(1), prohibiting convicted felons from possessing firearms, is unconstitutional under the Supreme Court's ruling in *New York State Rifle and Pistol Association v. Bruen*, 142 S.Ct. 2111 (2022). He says that he had a rifle for his own self-protection and he never used a firearm in an unlawful or irresponsible manner, and that he has no convictions for crimes of violence. Petitioner states that a § 2255 petition is inadequate for relief "because of the way the Supreme Court ruled in *Bruen*." Dkt. No. 1 at 8.

In his second ground, Petitioner argues that under 18 U.S.C. § 3624(c)(2), the Bureau of Prisons is required to give all prisoners with sentences of 60 months or more a minimum of 18 months of combined pre-release custody, consisting of 12 months in a halfway house and six months of home confinement. However, he asserts that his case manager, Mr. Jones, is not requesting this for Petitioner's sentence nor for any other inmate on his case load.

Petitioner further says that he graduated from a vocational education course in HVAC in 2021 and should have received 360 days off his sentence under the First Step Act and he earned good time credits of 15 days per month with a prison job. He states that he worked full time in the kitchen from 2018 to 2020 and so should be credited with 15 days per month for every 30 days. Had he been credited with all of the good time to which he was entitled, he says that he should have been released in June of 2022.

In his third ground for relief, Petitioner complains that he received a disciplinary case on December 3, 2021, for possession of stolen property, when in fact the TV had been in a cell into which he had been required to move.

In his fourth ground for relief, Petitioner complains that he has been denied the opportunity to work in UNICOR because of his past crime. According to Petitioner, this affected his release date because UNICOR continued to operate during the Covid-19 pandemic, and Petitioner apparently had not been able to work, and thus was not able to earn good time. Petitioner also says that he was classified as "low pattern" for three years and then was changed to "medium pattern" because the Bureau of Prisons decided on its own that the crime of possession of a firearm by a felon was a crime of violence. However, he was changed back to a low pattern classification in April of 2022. For relief, Petitioner asks for release to a halfway house and the setting aside of his firearms conviction.

**II. The Government's Response and Petitioner's Reply**

The Government has filed a response arguing that Petitioner has not exhausted his administrative remedies, his contention that the law requires 18 months of combined pre-release custody is incorrect, he is receiving all of the good time to which he is entitled, and the Supreme Court's decision in *Bruen* does not invalidate his conviction or offer him any basis upon which to seek relief under 28 U.S.C. § 2241.

Petitioner has filed a reply contending that it is the Second Chance Act, not the First Step Act, which authorizes 18 months of combined pre-release custody; exhaustion of administrative remedies would be futile in the time allowed for relief; and *Bruen* affirmed his Second Amendment right to

keep and bear arms, as demonstrated by the Third Circuit's decision in *Range v. Attorney General, United States of America*, 69 F.4th 96 (3rd Cir. 2023).

Petitioner also argues that 18 U.S.C. § 922(g)(1) is not a crime of violence, but the Bureau of Prisons said it was such a crime and added 5 to 7 points to his pattern score, he was wrongly denied the opportunity to work in UNICOR, he must be awarded his earned good time, and his claim will be moot if he waits until his administrative remedies are exhausted. He also claims that the Bureau must pay him $1,500.00 a day for every day that he is not released and his earned good time is not credited.

**III. Discussion**

A. The Validity of Petitioner's Conviction

Petitioner first challenges the validity of his conviction for felon in possession of a firearm under *Bruen*. Court records show that he is serving consecutive sentences of 120 months for felon in possession and witness tampering from the U.S. District Court for the Western District of Oklahoma. He also has prior convictions for destroying a car with a pipe bomb, lewd molestation of a nine-year-old girl, first-degree burglary, and embezzlement. *See United States v. Gieswein*, No. 22-6014, 2022 WL 2841835 (10th Cir. 2022).

In order to challenge his conviction in a § 2241 proceeding, Petitioner must show that the remedy available under 28 U.S.C. § 2255 is inadequate or ineffective to test the legality of his detention (the so-called "savings clause"). *Pack v. Yusuff*, 218 F.3d 448, 452 (5th Cir. 2000). The Fifth Circuit has held that the savings clause of § 2255 applies to a claim (1) that is based on a retroactively applicable Supreme Court decision which established that the petitioner may have been convicted of a non-existent offense, and (2) that was foreclosed by circuit law at the time when the claim should have been raised in the petitioner's trial, appeal, or first § 2255 motion. *Cabello v. United States*, slip op. no. 21-51066, 2022 U.S. App. LEXIS 19378 (5th Cir., July 13, 2022) (citing *Reyes-Requena v. United States*, 243 F.3d 893, 904 (5th Cir. 2001)). The core idea is that the petitioner may have been imprisoned for conduct which was not prohibited by law. *Christopher v.*

3

*Miles*, 342 F.3d 378, 381 (5th Cir. 2003). The petitioner bears the burden of demonstrating that the remedy under § 2255 is inadequate or ineffective. *Pack*, 218 F.3d at 452.

Petitioner argues that 18 U.S.C. § 922(g)(1) is unconstitutional under the Supreme Court's decision in *Bruen*. However, he has offered nothing to suggest that he cannot present this claim to the Tenth Circuit Court of Appeals through a motion for leave to file a successive motion to vacate under § 2255. Even had he done so, his claim lacks merit.

The question before this Court was addressed by the Western District of Texas in *Shipley v. Hijar*, Cause No. EP-23-cv-11-KC, 2023 U.S. Dist. LEXIS 9886, 2023 WL 353994 (W.D.Tex. Jan. 20, 2023). After discussing pre-*Bruen* precedent upholding the constitutionality of § 922(g)(1), that court explained as follows:

> In *Bruen*, the Supreme Court held "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 142 S. Ct. at 2127. It explained the government must "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms" to survive a challenge to its constitutionality. *Id*. Expanding on its earlier holding in *Heller* that the Second Amendment "protect[s] the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense," it specifically found the plain text of the Second Amendment likewise "protect[s] an individual's right to carry a handgun for self-defense outside the home." *Id*. at 2122. It therefore ruled New York's policy of issuing public-carry handgun licenses "only when an applicant demonstrates a special need for self-defense" violated the Second Amendment. *Bruen*, 142 S. Ct. at 2122. But Justice Kavanaugh reaffirmed "longstanding prohibitions on the possession of firearms" remain "presumptively lawful" notwithstanding the Court's decision. *Id.* at 2162 (Kavanaugh, J., concurring) (quoting *Heller*, 554 U.S. at 626–27 & n.26). And Justice Alito noted that Bruen did not "disturb[ ] anything that we said in *Heller* ... about restrictions that may be imposed on the possession or carrying of guns." *Id*. at 2157 (Alito, J., concurring).
>
> Based on this review of Fifth Circuit and Supreme Court precedent, the Court finds that § 922(g)(1) does not run afoul of the Second Amendment, the statute is constitutionally sound, and Shipley's claim is without merit. But the Court also notes that it is not permitted to "decide whether *Bruen* abrogates the pre-*Bruen* Fifth Circuit cases upholding Section 922(g)(1)." *United States v. Jordan*, EP-22-CR-01140-DCG-1, 2023 WL 157789, at *7 (W.D. Tex. Jan. 11, 2023). This is because the Court is bound by those precedents, and it must leave it to the Fifth Circuit to decide whether its decisions survive *Bruen*. *In re Bonvillian Marine Serv., Inc.,* 19 F.4th 787, 789 (5th Cir. 2021); *see also United States v. Connelly*, EP-22-CR-229-KC-2, 2022 WL 17829158, at *3 (W.D. Tex. Dec. 21, 2022) ("[T]his Court may not determine whether or how *Bruen* has changed Fifth Circuit precedents interpreting § 922; that question must be settled by the Fifth Circuit itself." (citing *Bonvillian*, 19 F.4th at 789)).

> Consequently, the Court finds that Shipley cannot meet his burden of showing that a retroactively applicable Supreme Court decision establishes he may have been convicted of a nonexistent offense. *Reyes-Requena,* 243 F.3d at 904. Hence, the Court also finds he cannot show that he is entitled to relief from his convictions under the § 2255(e) savings clause or § 2241.

*Shipley*, 2023 WL 353994, at *4.

Like the Western District, this Court lacks authority to decide whether *Bruen* abrogates the pre-*Bruen* Fifth Circuit cases upholding § 922(g)(1). In *United States v. Jones*, 88 F.4th 571 (5th Cir. 2023), a direct appeal of a criminal conviction applying a plain error standard, the Fifth Circuit explained that prior to *Bruen*, the court had held that § 922(g)(1) did not violate the Second Amendment, and Justice Kavanaugh's concurring opinion in *Bruen* said that nothing in the opinion should be taken to cast doubt on longstanding prohibitions against possession of firearms by felons. *Id*. at 573 (citing *Bruen*, 142 S.Ct. at 2162 (Kavanaugh, J., concurring)). The Fifth Circuit observed that it had not yet addressed the impact of *Bruen* on the constitutionality of § 922(g)(1) in a case where the issue had been preserved in the district court and concluded that in the absence of binding authority, the appellant could not show plain error. *Id*. at 573-74.

Thus, as in *Shipley*, Petitioner has not met his burden of showing that a retroactively applicable Supreme Court decision establishes that he was convicted of a non-existent offense. *See also Gray v. Cox*, civil action no. 2:23cv11, 2023 WL 4602733 (S.D.Tex. 2023) (district court must leave it to the Fifth Circuit to decide whether its decisions survive *Bruen*). His challenge to his conviction under the savings clause is without merit.

B. Time of Confinement

Petitioner asserts that the Bureau of Prisons is required to give all prisoners with sentences of 60 months or more a minimum of 18 months of combined pre-release custody in a halfway house and home confinement, this being 12 months in a halfway house and six months of home confinement. According to Petitioner, this statute says that the Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term, not to exceed 12 months, under conditions which will afford the prisoner a reasonable opportunity to adjust and prepare for the re-entry of the prisoner back into the

5

community. He says that one of the most significant requirements of the First Step Act is to provide the maximum halfway house time to every prisoner allowed under § 3624(c)(1), which Petitioner says is 12 months, and to provide the maximum amount of home confinement time, which Petitioner says is the shorter of 10 percent of the term of imprisonment or six months. However, he says that his case manager, Mr. Jones, is not following this law and is not requesting the 18 months of home confinement for Petitioner or anyone else on Jones' caseload.

Petitioner states that he graduated from a vocational program in 2021 and should have received 360 days off of his sentence under the First Step Act, plus 15 days per month of programming and a prison job. He states that he worked in the prison kitchen full-time from 2018 to 2020 and should have received 15 days a month for every 30 days that he worked at least an hour of that day. He says that he was at a low pattern score until November of 2021, when the Bureau of Prisons declared on its own that § 922(g)(1) is a crime of violence and he was changed to a medium pattern score.[1] He was then changed back to a low pattern score in April of 2022. Had he received all of the time to which he was entitled, Petitioner says that he should have been released in July of 2022.

The Respondent argues that Petitioner failed to exhaust his administrative remedies. According to Respondent, Petitioner has filed 43 administrative remedy requests during his incarceration, two of which appear to be related to this claim, one concerns home confinement, and one concerns Residential Reentry Center placement. However, Respondent says that both of these requests - one dated October 5, 2020, and the other dated September 1, 2021 - were rejected by the institution and Petitioner did not submit amended or corrected requests. (Dkt. No. 8- 1, p. 15). Thus, Respondent says that Petitioner did not exhaust his administrative remedies on this issue.

---

[1] The PATTERN [Prisoner Assessment Tool Targeting Estimated Risk and Need] score is a tool used by the Bureau of Prisons to measure a prisoner's changes during incarceration and predict his risk of re-offending. *See United States v. Gutierrez*, crim. no. 2:03cv367-2, 2020 WL 6743737 (S.D.Tex. 2020); https://www.bop.gov/inmates/fsa/pattern.jsp.

The Fifth Circuit has stated that federal courts do not have jurisdiction over complaints related to the computation of sentences or sentencing credit until exhaustion of administrative review by the Federal Bureau of Prisons. *Falcetta v. United States*, No. 20-50247, 2021 U.S. App. LEXIS 35722, 2021 WL 5766571, at *1 (5th Cir. 2021) (citing *United States v. Dowling*, 962 F.2d 390, 393 (5th Cir. 1992); *United States v. Wilson*, 503 U.S. 329, 335-36 (1992)). Exceptions apply only in extraordinary circumstances, with the inmate bearing the burden of showing that administrative review would be futile. *Broderick v. Chapman*, 364 Fed. Appx. 111, 112 (5th Cir. 2010) (citing *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994)).

This administrative review procedure by the Bureau of Prisons consists of four steps. First, the inmate must attempt to informally resolve the issue with the staff. If informal attempts are unsuccessful, the prisoner files a written complaint with the Warden using a BP-9 form. 28 C.F.R. §542.14(a). If the prisoner is dissatisfied with the Warden's response, he may appeal to the Regional Director using a BP-10 form. 28 C.F.R. §542.15. If still unsatisfied, he may appeal to General Counsel at the Central Office using a BP-11 form. 28 C.F.R. §542.15. The Fifth Circuit has stated that a prisoner has not exhausted his administrative remedies until his claim has been denied at all levels. *Huff v. Neal*, 555 Fed. Appx. 289, 293 (5th Cir. 2014). Respondent's evidence in this case shows that Petitioner has not presented his claims concerning his time credits through all levels of the administrative remedy procedure.

Petitioner does not argue that he has exhausted his administrative remedies; rather, he contends that he does not have to exhaust his administrative remedies because he is due to be released in February of 2024 and exhaustion would be futile in the time allowed to provide for relief. He states that he is currently in the process of exhausting and as of the date of his reply to the response, in June of 2023, he was at the BP-10 (regional appeal) stage.

However, Petitioner signed his petition in July of 2022, over a year and a half prior to his projected February 2024 release date. He offers no reason why he could not have exhausted his administrative remedies prior to filing his petition as he was required to do. *See, e.g.*, *Falcetta v. United States*, 734 Fed. Appx. 286, 287 (5th Cir. 2018) (dismissal for lack of jurisdiction of habeas

7

petition concerning sentencing credit was appropriate because the petitioner had not exhausted his sentencing credit claim fully through the BOP procedures prior to filing his habeas petition). Respondent's contention that Petitioner failed to exhaust his administrative remedies is correct.

In *Graham v. Bureau of Prisons*, No. EP-22-CV-387-DCG, 2022 WL 16858519 (W.D.Tex. Nov. 10, 2022), a case somewhat similar to the present one, the prisoner argued that he had a 72 month sentence, on which the required time for in custody incarceration was 61 months, not including 18 months of halfway house or home confinement time to which he was entitled. When this time was factored in, the prisoner maintained that he was required to serve 43 months in custody, and he had already served 48 - thus claiming that he had exceeded his required sentence. He also asserted that these facts were extraordinary and so he was not required to exhaust his administrative remedies.

The Western District of Texas rejected the exhaustion argument, observing that the Bureau of Prisons should have the opportunity to correct any error prior to judicial intervention and that the prisoner delayed mailing his petition until 48 months of his sentence had elapsed, at a time when he claimed he had already completed his sentence. *Id.* at *2-3. Similarly, the Bureau of Prisons should have had the opportunity to correct any error in Petitioner's case, but Petitioner did not exhaust his administrative remedies.

In any event, Petitioner has failed to show entitlement to the relief sought. He argues that the Government is "required" to give him a minimum of 18 months of pre-release confinement in a halfway house or home confinement, but the statute he cites sets out no such requirement. Instead, the statute cited by Petitioner, 18 U.S.C. § 3624(c), reads in pertinent part as follows:

(c) Prerelease custody.--

    (1)    In general.--The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

    (2)    Home confinement authority.--The authority under this

> subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months. The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph.

The Western District of Texas has explained that this statute, as part of the Second Chance Act, permits the Bureau of Prisons to consider placing inmates nearing the end of their sentences into pre-release community confinement. This may include placement in a community correctional facility such as a residential reentry center or in home detention. *Bennett v. Nash*, No. A-16-CV-417-LY, 2016 WL 8677298, at *1 (W.D. Tex. Oct. 14, 2016), r*eport and recommendation adopted* November 23, 2016. There is no requirement that such placement be mandatory or any right for a particular prisoner to be placed in pre-release community confinement; rather, such placement is wholly discretionary by the Bureau of Prisons. *See* 28 C.F.R. § 570.22 (inmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. § 3621(b), determined on an individual basis); 18 U.S.C. § 3621(b) (authorizing the Bureau of Prisons to designate the place of a prisoner's confinement and listing factors pertinent to that designation); *see also Creager v. Chapman*, No. 4:09-cv-713-A, 2010 WL 1062610 (N.D.Tex., March 22, 2010).

His claim on this point is without merit.

C. The Disciplinary Case

Petitioner complains that he received a disciplinary case for possession of stolen property on December 3, 2021, stating as follows:

> The TV was in a cell that Mr. Gieswein had covid [sic]. The TV was still in D Unit, where it was originally located. The staff placed a computer, phone, and TV in the D Unit wing due to Covid-19. Mr. Gieswein should have not been charged with an incident report because the TV never left D Unit, was brought in by the Staff and was located in a cell that Mr. Gieswein had to move into. It was not stolen property, and Mr. Gieswein did not possess the TV. It was in a cell that Mr. Gieswein had to move into.

Dkt. No. 1 at 10. Although Petitioner says that he has exhausted all of his administrative remedies on this issue, the listing of grievances which he filed, attached to the Respondent's answer (Dkt. No. 8-1, pp. 14-16), does not show any grievances concerning a disciplinary hearing in December of 2021.

Exhaustion of administrative remedies is required prior to challenging a disciplinary proceeding in the Federal Bureau of Prisons. *Biron v. Upton*, 670 Fed. Appx. 869, 870 (5th Cir. 2016) (citing *Fuller*, 11 F.3d at 62); *Butts v. Martin*, 877 F.3d 571, 582-83 (5th Cir. 2017). Because Petitioner did not do so, his claim may be dismissed on this basis.

In addition, Petitioner's sole claim concerning this disciplinary case is that he is actually innocent of the charge. An allegation of actual innocence, standing alone, is not a cognizable claim for federal habeas corpus relief. *Foster v. Quarterman*, 466 F.3d 359, 367 (5th Cir. 2006) (citing *Herrera v. Collins*, 506 U.S. 390, 400 (1993)); *see Shaw v. Director, TDCJ-CID*, No. 6:17cv514, 2018 U.S. Dist. LEXIS 2200550 (E.D.Tex. September 29, 2018), *report and recommendation adopted at* 2019 U.S. Dist. LEXIS 15358, 2019 WL 398961 (E.D.Tex. January 31, 2019) (applying actual innocence analysis to prison disciplinary proceeding). Petitioner's claim on this point is without merit. *Floyd v. Vannoy*, 894 F.3d 143, 155 (5th Cir. 2018) (Fifth Circuit "does not consider habeas relief based on freestanding claims of actual innocence").

<u>D. Unicor and PATTERN</u>

In his fourth ground for relief, Petitioner complains that he has been denied the right to work at UNICOR, which affected his release date. The Fifth Circuit has held that federal prisoners have no liberty or property interests in their prison job assignments. *Bulger v. U.S. Bureau of Prisons*, 65 F.3d 48, 49-50 (5th Cir. 1995). Petitioner has offered nothing to suggest that the denial of employment at UNICOR amounted to an atypical or significant hardship in relation to the ordinary incidents of prison life. *See Williams v. Watts*, No. 5:08cv68, 2010 U.S. Dist. LEXIS 124716 (E.D.Tex. August 20, 2009), *report and recommendation adopted at* 2010 U.S. Dist. LEXIS 10534, 2010 WL 532791 (E.D.Tex. February 8, 2010). His claim on this point is without merit.

Petitioner again complains that in November of 2021, the Bureau of Prisons decided on its own that 18 U.S.C. § 922(g)(1) was a "crime of violence" and raised his PATTERN score from low to medium. However, he acknowledges that his PATTERN score returned to low in April of 2022 and remained there until the date his petition was filed. He does not assert any harm resulting from the five months being classified in the medium range rather than the low range of the PATTERN score;

instead, he appears to contend that he has not received all of the good time to which he believes himself entitled, presumably because of his PATTERN classification. He states:

> Mr. Gieswein graduated from H/vac Vo Tech in 2021 and should have received 360 days off of his sentence under the First Step Act and the earned good time credits of 15 days a month of programming and a prison job. Mr. Gieswein worked in the kitchen full-time from 2018-2020, which he should be credited 15 days a month for every 30 days that he worked at least an hour of that day. Mr. Gieswein was at a Low Pattern score throughout the first three years of the First Step Act and became a Medium Pattern score because the BOP declared, on its own, that 18 U.S.C. § 922(g)(1) is a crime of violence. Mr. Gieswein was at a Medium under the Pattern score from November 2021 till April 2022, which he is currently at a Low Pattern score since April 2022.
>
> If Mr. Gieswein is credited the full year of extra good time for programming and a prison job, and gets the required amount of 18 months under 3624(c)(1-2), he should have been released from prison in July 2022.

Dkt. No. 1 at 9.

Petitioner's complaint thus revolves around his complaints about extra good time and his claim that he is entitled to 18 months of pre-release supervision, but as set out above, he failed to exhaust his administrative remedies concerning the computation of his good time credits. Petitioner's claim on this point is without merit.

In his reply to Respondent's answer, Petitioner asserts that the Bureau of Prisons must pay him $1,500.00 per day for every day he is not released and his earned good time is not credited. However, monetary damages are not available in habeas corpus proceedings. *Preiser v. Rodriguez*, 411 U.S. 475, 494 (1973). This claim is without merit.

## RECOMMENDATION

It is accordingly recommended that the above-styled application for the writ of habeas corpus be dismissed with prejudice, except that any claim Petitioner raises for monetary damages should be dismissed without prejudice.

A copy of these findings, conclusions and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendations must file specific written objections within 14 days after being served with a copy.

In order to be specific, an objection must identify the specific finding or recommendation to

which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's proposed findings, conclusions, and recommendation where the disputed determination is found. An objection which merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific, and the district court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Commission*, 834 F.2d 419, 421 (5th Cir. 1987).

Failure to file specific written objections will bar the objecting party from appealing the factual findings and legal conclusions of the Magistrate Judge which are accepted and adopted by the district court except upon grounds of plain error. *Duarte v. City of Lewisville*, 858 F.3d 348, 352 (5th Cir. 2017).

SIGNED this the 12th day of February, 2024.

_____
J. Boone Baxter
UNITED STATES MAGISTRATE JUDGE